UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                          Plaintiff,

            v.

ANDRE HEMINGWAY,

                          Defendant.

_____

REPORT & RECOMMENDATION

05-CR-6108L

## BACKGROUND

By Order dated September 13, 2005, all pre-trial matters in the above captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 10).

Defendant Andre Hemingway ("Hemingway") is charged in five counts of a six-count superseding indictment.  The first count charges that between January 2000 and March 2006, Andre Hemingway and his brother Joey Hemingway conspired to possess with intent to distribute, and to distribute, fifty grams or more of cocaine base and five hundred grams or more of cocaine, in violation of 21 U.S.C. § 846.  The second and third counts charge that on March 28, 2005, Andre and Joey Hemingway possessed with intent to distribute cocaine base and cocaine, respectively, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. The fourth and fifth counts charge that on March 8, 2006, Andre and Joey Hemingway possessed with intent to distribute cocaine base and cocaine, respectively, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

Currently pending before this Court are Hemingway's motions to suppress statements and tangible evidence.[1]  (Docket ## 44, 71).  For the following reasons, it is the recommendation of this Court that Hemingway's motions be denied.

## FACTUAL BACKGROUND

On September 27, 2006, this Court held an evidentiary hearing on Hemingway's suppression motions.  At the hearing, the government offered the testimony of Officer Edward Bernabei of the Rochester Police Department and Special Agent John Hayes of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  Their testimony, which I find credible, is summarized below.  No witnesses were called by the defense.

Agent Hayes testified that during the weeks prior to March 8, 2006, he had received information from a reliable confidential informant who had observed Andre and Joey Hemingway conducting cocaine sales from the downstairs apartment at 187 Lewis Street in the City of Rochester.  (Tr. 42).  Based in part upon that information, a search warrant for that apartment was issued by Rochester City Court Judge Stephen Miller.  The warrant specifically authorized a search for cocaine, cocaine-related paraphernalia, records and firearms.  (Tr. 5).

Agent Hayes and Officer Bernabei executed the search warrant on March 8, 2006.  (Tr. 5).  Bernabei was the first officer to enter the downstairs apartment through the front door of the residence.  As he entered, he announced, "Police, search warrant."  (Tr. 7-8).  The front door

---

[1] Hemingway's omnibus motion relating to the superseding indictment also sought, *inter alia*, a bill of particulars, discovery and inspection, *Brady* material, *Jencks* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence and the preservation of rough notes.  (Docket # 44).  Each of these requests was either resolved by the parties or decided in open court by the undersigned on June 14, 2006.  (Docket ## 58, 60).

2

led directly into the living room of the apartment, where eight to ten people were seated at a table located in the center of the room.  As the officers entered, three of those people stood and ran toward the back of the residence and into the kitchen.  (Tr. 8-9, 44).  Hayes and Bernabei recognized two of the three individuals as Andre and Joey Hemingway.  The agents followed the suspects into the kitchen, ordered them to get down on the ground and handcuffed them.  (Tr. 9, 44-46).

After securing the three individuals, along with a fourth person who was already present in the kitchen, Bernabei observed behind the stove a clear plastic ziplock bag containing a white, powdery substance, later determined to be cocaine.  (Tr. 14-17, 46; G.Ex 4).  Bernabei announced his discovery to Hayes while the defendants and the two other individuals were still detained in the kitchen.  (Tr. 17-18).  Bernabei discovered another plastic bag of cocaine inside a garbage can next to the stove, as well as several empty clear plastic bags located around the garbage can.  (Tr. 18, 48).[2]  More cocaine was discovered in plastic bags located both on the floor of the kitchen and on top of the counter.  (Tr. 20-21; G.Ex. 2, 6).

Following the discovery of the cocaine, Andre and Joey Hemingway were arrested and searched by Hayes.  (Tr. 47).  From Andre Hemingway, Hayes removed $132 in cash, a small bag of marijuana, one set of keys and a loose automobile key.  (Tr. 47).  Following these searches, Joey Hemingway asked the officers what he was being charged with.  (Tr. 34, 49).  Hayes responded that he was being charged with "cocaine possession."  (Tr. 34, 49).  Andre Hemingway then stated, "that's mine, it's just the cocaine, it's just mine."  (Tr. 35, 49).

---

[2] Officer Bernabei testified that a smaller, "dime bag" of cocaine may also have been present near the garbage can.  (Tr. 19).

Once the search was completed, Andre Hemingway was transported to the

Monroe County Public Safety Building, where he was interviewed.  (Tr. 23).  At approximately

5:35 p.m., Bernabei, along with Special Agent Jane Baldisari of the Bureau of Alcohol, Tobacco,

Firearms and Explosives, entered the interview room in which Hemingway was located.  (Tr. 24).

Upon entering the room, Bernabei introduced himself and asked Hemingway whether he needed

to use the restroom or whether he wanted something to eat or drink.  Hemingway declined.

(Tr. 25).  Before beginning the interview, Bernabei advised Hemingway of his *Miranda* rights by

reading verbatim from a *Miranda* notification card.  (Tr. 25; G.Ex. 9).  Specifically, Bernabei

advised Hemingway:

> You have the right to remain silent.  You don't have to say
> anything if you don't want to.  Anything you say can be used
> against you in a court of law.  You have a right to have a lawyer
> while you answer questions, if you wish.  If you can't afford a
> lawyer, one will be appointed to you.  If you do wish to talk to me
> now, you can stop at any time.

(Tr. 26).  After reading the warnings, Bernabei asked Hemingway, "Do you understand what I

just said to you?"  Hemingway replied that he understood his rights.  (Tr. 26).  Bernabei then

asked Hemingway whether he wanted to give up his rights and speak with him, to which

Hemingway responded affirmatively.  (Tr. 26).

According to Bernabei, Hemingway did not appear to be under the influence of

drugs or alcohol during the interview.  Bernabei questioned Hemingway about his education and

learned that he had attended high school until the eleventh grade.  (Tr. 27).

Bernabei then questioned Hemingway about the cocaine seized from the

apartment at 187 Lewis Street.  Hemingway reiterated that the cocaine belonged to him and

4

stated that he was a drug user.  (Tr. 29, 39).  He stated that he had been sitting at the table when

the officers had arrived, had "got scared and jumped up and ran into the kitchen," took the

narcotics out of his pocket and threw them.  (Tr. 29).

Bernabei also questioned Hemingway about the set of keys and single car key

found on his person.  Hemingway indicated that the set of keys belonged to his mother's house,

but that he did not know what the other key fit.  (Tr. 30).  At that point, Hemingway indicated

that he wanted to stop talking, and the interview ended.  (Tr. 30, 40).  According to Bernabei, the

entire interview lasted approximately half an hour.  At no time during the interview did

Hemingway ask to speak with an attorney.  (Tr. 30).

The following day, Bernabei applied for and obtained a search warrant for a 1989

Mazda MPV van.  In his application for the warrant, Bernabei affirmed, among other things, that

he had received information from a reliable confidential informant that Andre and Joey

Hemingway were selling crack cocaine from 187 Lewis Street and that Joey Hemingway used the

Mazda van to drive to 187 Lewis Street to sell narcotics.  Bernabei further affirmed that a search

warrant had been executed for 187 Lewis Street, during which a 1989 Mazda MPV van had been

observed near the residence.  During the search, a narcotics detection dog, which was called to

the scene, alerted to the presence of narcotics in the Mazda van.  Finally, Bernabei affirmed that a

key to the Mazda van was seized from Andre Hemingway's person.  (Docket # 72, Ex. 1).

Upon Bernabei's application, a search warrant was issued for the Mazda van.

(Docket # 72, Ex. 1).  According to Hemingway, the execution of that search warrant resulted in

the seizure of an additional quantity of cocaine found on the driver's seat of the vehicle, along

with personal papers belonging to Joey Hemingway.  (Docket # 69 at ¶ 4).

## DISCUSSION

Hemingway moves to suppress statements he made while at his residence at 187
Lewis Street and during the subsequent interview at the Public Safety Building.  In addition,
Hemingway also challenges the constitutionality of the seizure of the automobile key from his
person, as well as evidence subsequently seized pursuant to a search warrant for the 1989 Mazda
MPV van that was parked close to the residence at the time of the search.  (Docket ## 44, 71).

## I.  Motion to Suppress Statements

**A.  Statements Made at 187 Lewis Street**:  Hemingway first seeks to suppress
statements made by him during the execution of the search warrant at 187 Lewis Street.  It is, of
course, well-settled that statements made during custodial interrogation are generally
inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*,
384 U.S. 436 (1966).  In *Miranda*, the Supreme Court held that the prosecution may not use a
defendant's statements that are the product of custodial interrogation unless it demonstrates that
the defendant was first warned of his Fifth Amendment privilege against self-incrimination and
then voluntarily waived that right.  *Miranda v. Arizona*, 384 U.S. at 444.

> Custodial interrogation exists when a law enforcement official
> questions an individual and that questioning was (1) conducted in
> custodial settings that have inherently coercive pressures that tend
> to undermine the individual's will to resist and to compel him to
> speak (the in custody requirement) and (2) when the inquiry is
> conducted by officers who are aware of the potentially
> incriminating nature of the disclosures sought (the investigative
> intent requirement).

6

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (citing *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

In the case at bar, the government does not contest that Hemingway was in custody as the search was being conducted at 187 Lewis Street.  The question therefore is whether his statements were made in response to any interrogation by the officers.

"'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  Interrogation includes direct questioning, as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v. Innis*, 446 U.S. at 301, or that would "produce psychological pressures that [would] subject the individual to the 'will' of his examiner." *United States v. Morales*, 834 F.2d at 38 (citations omitted).  *See also United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992); *United States v. Thomas*, 961 F. Supp. 43, 44-45 (W.D.N.Y. 1997).

Statements made spontaneously, however, are generally excepted from the *Miranda* requirements.  The Supreme Court has recognized that statements made by a defendant that are not elicited in response to interrogation do not violate the Fifth Amendment.  *See Innis*, 446 U.S. at 299-300.  As the Court has reasoned:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.  The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . .  Volunteered statements of any kind are not barred by the Fifth

>Amendment and their admissibility is not affected by our holding
>today.

*Miranda*, 384 U.S. at 478; *see also Innis*, 446 U.S. at 299-300.

Andre and Joey Hemingway were initially secured in the kitchen at 187 Lewis Street as the search warrant was being executed.  Upon observing cocaine, Bernabei announced the discovery of the narcotics to the other officers while the defendants were present in the kitchen.  (Tr. 17-18, 51-52).  A short time later, following his arrest and search incident to arrest, Joey Hemingway asked the officers what he was being charged with.  Hayes responded, "cocaine possession." (Tr. 34, 49).  At that point, Andre Hemingway stated, "that's mine, it's just the cocaine, it's just mine."  (Tr. 35, 49).

Hayes's simple statement that Joey Hemingway would be charged with cocaine possession was a direct response to the question posed by that defendant.  Hayes could not reasonably have anticipated that his response to Joey Hemingway's question would elicit an incriminating statement from Andre Hemingway.  Accordingly, I find that Hemingway's statement about the cocaine was spontaneous and was not obtained in violation of his Fifth Amendment rights.  I thus recommend that Hemingway's motion to suppress the statement made by him at 187 Lewis Street be denied.

**B.  <u>Statements Made at Public Safety Building</u>:**  Hemingway also moves to suppress statements he made during the interview at the Public Safety Building.  As set forth above, the Supreme Court in *Miranda* held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was both warned of his Fifth Amendment privilege against self-incrimination and

8

voluntarily waived that right. *Miranda*, 384 U.S. at 444. To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The record before this Court, including the testimony of Officer Bernabei, reveals that once Hemingway was transported to the Public Safety Building following his arrest, he was interviewed by Bernabei and Special Agent Baldisari. (Tr. 24). When the agents entered the interview room, Bernabei introduced himself to Hemingway and asked him whether he wanted something to eat or drink, which Hemingway declined. (Tr. 25). Before proceeding with the interview, Bernabei advised Hemingway of his *Miranda* rights by reading from a *Miranda* notification card. (Tr. 25; G.Ex. 9). After advising Hemingway of each of his rights, Bernabei asked him whether he understood and whether he wanted to waive his rights. Hemingway responded affirmatively to both questions. (Tr. 26).

Bernabei thereafter questioned Hemingway about cocaine seized from 187 Lewis Street. Hemingway admitted to ownership of the narcotics, but indicated that they were for his personal use. (Tr. 29, 39). When Bernabei challenged that statement by asking Hemingway why he did not have paraphernalia typically possessed by a narcotics user, Hemingway refused to reply. (Tr. 28-29). Bernabei further questioned Hemingway about the keys found on his person. Hemingway indicated that some of the keys were for his mother's house and that he did not know what the single automobile key was for. (Tr. 30). The interview then ended because Hemingway indicated that he wanted to stop talking. (Tr. 30, 40). On this record, I find that the

9

government has demonstrated by a preponderance of the evidence that Hemingway was fully aware of his Fifth Amendment rights and that he voluntarily agreed to waive such rights before making any statements to Officer Bernabei.  It is therefore the recommendation of this Court that Hemingway's motion to suppress statements made at the Public Safety Building be denied.

## II.   Motion to Suppress Tangible Evidence

Hemingway also moves to suppress the $132 in cash, marijuana, set of house keys and the automobile key seized from his person, as well as the narcotics and other evidence subsequently seized from the Mazda van.  According to Hemingway, the seizure of the key from his pocket constituted an unlawful search and the evidence subsequently seized from the Mazda van was the fruit of both the unlawful search of his person and his statements that he claims were unlawfully obtained.

A.   **Automobile Key Seized from Hemingway's Person:**  "On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests upon the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers."  *United States v. Wyche*, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004) (citing *United States v. Gotti*, 244 F. Supp. 2d 120, 124 (E.D.N.Y. 2003); *United States v. Dickerson*, 113 F. Supp. 2d 324, 326 (N.D.N.Y. 2000)); *see also United States v. Pena*, 961 F.2d 333, 338-39 (2d Cir. 1992) (on motion to suppress, government bears burden of establishing probable cause for warrantless arrest) (*quoting United States v. Rivera*, 321 F.2d 704, 706 n.1 (2d Cir. 1963)).  Accordingly, because Hemingway moves only to suppress evidence seized from his

person and not the narcotics seized pursuant to the search warrant for 187 Lewis Street, the government in this case must establish the legality of the search of his person.

As an initial matter, this Court finds that Hemingway's detention during the search of 187 Lewis Street was justified. Pursuant to the Supreme Court's holding in *Michigan v. Summers*, 452 U.S. 692, 704-05 (1981), officers executing a search warrant may detain the occupants of the premises during the course of the search. *See Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991) ("[a]bsent special circumstances, the police of course have the authority to detain occupants of premises while an authorized search is in progress"). Such detention is justified in order to ensure officer safety, to prevent flight in the event that incriminating evidence is discovered and to facilitate the orderly completion of the search. *Michigan v. Summers*, 452 U.S. at 702-03.

Here, the officers entered the downstairs apartment at 187 Lewis Street in order to execute a search warrant for the premises. The warrant was based in part upon information from a confidential informant indicating that Andre and Joey Hemingway had been conducting cocaine sales at that address. (Tr. 42). As the agents entered 187 Lewis Street, they observed Andre and Joey Hemingway attempt to flee through the kitchen. The agents detained the defendants in the kitchen, and while doing so observed quantities of cocaine throughout the room. (Tr. 7-9, 14-18, 44-46). At that point, the agents' authority to detain Andre and Joey Hemingway ripened into probable cause for their arrest.

Probable cause exists when "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2)

by the person to be arrested." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983); *see also United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).  Such belief need not be correct or even more likely true than false. *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Rather, probable cause is a flexible standard assessed against the totality of the circumstances, *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983), and one that requires merely a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (*quoting Brinegar v. United States*, 338 U.S. at 175).  *See United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990) (probable cause amounts to a "probability or substantial chance of criminal activity"), *cert. denied*, 499 U.S. 924 (1991).  Of course, "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 92 (1979). *Accord Maryland v. Pringle*, 540 U.S. at 371.

The agents' information from the confidential informant regarding Andre and Joey Hemingway's cocaine sales from 187 Lewis Street, together with their observations of the defendants' presence at the time of the search, their attempted flights and the discovery of cocaine in the apartment was sufficient to warrant the agents' belief that a narcotics offense had been committed by the defendants.  *See United States v. Fisher*, 702 F.2d at 375; *see also United States v. Sepulveda*, 102 F.3d 1313, 1316 (1st Cir. 1996) (defendant's presence inside apartment used solely for purpose of distributing narcotics [drug house] gives rise to probable cause to arrest); *United States v. Hugaboom*, 984 F.2d 1083, 1083-84 (10th Cir. 1993) (probable cause to arrest defendant present in methamphetamine laboratory who had been present and fled during execution of previous warrant); *United States v. Villegas*, 700 F. Supp. 94, 100 (N.D.N.Y. 1988)

12

(probable cause to arrest defendants existed based upon their presence at a farm being used as a "cocaine factory" and their "participat[ion] in various stages of the operation")*, aff'd*, 899 F.2d 1324 (2d Cir. 1990), *cert. denied*, 498 U.S. 991 (1990).

Once probable cause to arrest Andre Hemingway was established, the agents were authorized to search him incident to that arrest.  As the Supreme Court has established, upon a lawful arrest, the arresting officer may search the person arrested for weapons or for evidence of the suspected crime.  *United States v. Robinson*, 414 U.S. 218, 225-26 (1973); *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *United States v. Campbell*, 959 F. Supp. 606, 611 (W.D.N.Y. 1997), *aff'd*, 152 F.3d 921 (2d Cir. 1998).

Accordingly, I find that probable cause existed for Hemingway's arrest and that the subsequent search of his person was justified as a search incident to that arrest.  I therefore recommend that Hemingway's motion to suppress the $132 cash, small bag of marijuana and keys seized from his person be denied.

**B.  Evidence Subsequently Seized from Vehicle:**  In his final motion, Hemingway seeks suppression of evidence seized from the 1989 Mazda MPV van.  Hemingway asserts that the search warrant for the vehicle was unsupported by probable cause because the application referred to an unrelated 2005 Buick Century four door sedan.[3]  (Docket # 69; *see* Docket # 72, Ex. 1).  The government opposes Hemingway's motion on the grounds that he lacks standing to challenge the search of the van.  (Docket # 72).

---

[3]  The search warrant application submitted by Officer Bernabei clearly sought authorization for a search of the 1989 Mazda MPV van.  The single reference to a 2005 Buick Century four-door sedan was an apparent typographical error.  (*See* Docket # 72, Ex. 1).  Thus, even if this Court were to find that Hemingway had established standing to challenge the search of the Mazda van, I find that the warrant was adequately supported by probable cause, and I would recommend that Hemingway's motion to suppress on that basis be denied.

A defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).  This expectation of privacy must be both subjectively and objectively reasonable – that is, the defendant must have a subjective expectation of privacy and that expectation must be one that is deemed objectively reasonable by society at large.  *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997); *United States v. Osorio*, 949 F.2d at 40.  Courts generally evaluate standing by considering "whether the defendant had any property or possessory interest in the place searched or the items seized."  *Id.* (citations omitted).

As noted above, the burden of establishing standing falls squarely upon the defendant.  *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).  This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.  A defendant's unsworn assertion of the Government's representations does not meet this burden."  *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).

In his application for the search warrant for the 1989 Mazda MPV van, Bernabei affirmed that the vehicle was registered to Lue Hemingway and was believed to be utilized by Joey Hemingway.  (Docket # 72, Ex. 1).  Andre Hemingway has failed to submit to this Court any sworn affidavit or testimony of someone with personal knowledge to demonstrate that he had a reasonable expectation of privacy in the Mazda.  Instead, Hemingway's counsel argues that standing is established by the fact that a key for the Mazda van was found on Hemingway's

person at the time of his arrest.  This argument is unavailing.  In *United States v. Sanchez*, 635

F.2d 47 (2d Cir. 1980), the Second Circuit held that the mere possession of keys to a vehicle is

insufficient to confer a constitutionally protected interest in the privacy of that vehicle.  *Id.* at 64.

Thus, Hemingway has not met his burden of establishing standing to contest the search of the

Mazda van.  It is therefore my recommendation that Hemingway's motion to suppress evidence

seized from the Mazda on the grounds that the search warrant for the vehicle was unsupported by

probable cause be denied.

  Moreover, to the extent Hemingway argues that the evidence seized from the

Mazda should be suppressed as the fruit of the unlawfully obtained statements or the unlawful

seizure of the key from his person, this Court disagrees.  Because I have already recommended

that Hemingway's motions to suppress statements and tangible evidence seized from his person

be denied, it is my further recommendation that Hemingway's motion to suppress evidence

seized as the fruit of those statements and seizure also be denied.


### CONCLUSION

  For the foregoing reasons, it is my recommendation that Hemingway's motion to

suppress statements made at 187 Lewis Street and at the Public Safety Building **(Docket # 44)** be

**DENIED**.  It is my further recommendation that Hemingway's motion to suppress tangible

evidence seized from his person at the time of his arrest **(Docket # 71)** be **DENIED**.  Finally, it is

my recommendation that Hemingway's motion to suppress tangible evidence seized from the

1989 Mazda MPV van **(Docket # 71)** be **DENIED**.


    *s/Marian W. Payson*
        MARIAN W. PAYSON
      United States Magistrate Judge

Dated: Rochester, New York
      January  3 , 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

_s/Marian W. Payson_____
    MARIAN W. PAYSON
    United States Magistrate Judge

Dated: Rochester, New York
       January _3_, 2007

---

[4]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).